UNITED STATES BANKRUPTCY COURT  
SOUTHERN DISTRICT OF NEW YORK                                                    **Not for Publication**
-------------------------------------------------------------X

In re:

    Douglas E. Palermo,                                                            Chapter 7  
                                               Case No. 05-25081 (ASH)

                         Debtor.

-------------------------------------------------------------X

    Doubet, LLC,

                     Plaintiff,                                                    Adv. Pro. No. 06-8285

    v.

    Douglas E. Palermo,

                     Defendant.

-------------------------------------------------------------X

**A P P E A R A N C E S**:

**LOWENSTEIN SANDLER PC**  
**Attorneys for Plaintiff Doubet, LLC**  
**By: Bruce Buechler, Esq.**  
    **S. Jason Teele, Esq.**  
**1251 Avenue of the Americas**  
**New York, NY 10019**

**COLE, SCHOTZ, MEISEL,**  
**FORMAN & LEONARD, P.A.**  
**Attorneys for Debtor and Defendant Douglas E. Palermo**  
**By: Laurence May**  
    **Nolan E. Shanahan**  
**900 Third Avenue**  
**New York, NY 10022**

**Adlai S. Hardin, Jr., U.S.B.J.**

### DECISION ON ATTORNEYS' FEES AND COSTS

    Doubet, LLC ("Doubet") seeks entry of an order awarding it reasonable

attorneys' fees and costs incurred in connection with the prosecution of this adversary proceeding. After conducting a trial, the court entered its Decision After Trial denying the Debtor a discharge. An Order and Judgment denying the Debtor a discharge was entered by the Court on July 16, 2007. For the following reasons Doubet's request for attorneys' fees is denied and costs approved.

## Jurisdiction

This Court has jurisdiction over this core proceeding under 28 U.S.C. §§ 1334(a) and 157(a) and (b) and the standing order of referral to bankruptcy judges dated July 10, 1984, signed by Acting Chief Judge Robert J. Ward.

## Background

This decision presumes familiarity with the facts as stated in this Court's prior decision at *Doubet, LLC v. Palermo*(*In re Palermo*), 370 B.R. 599 (Bankr. S.D.N.Y. 2007).

## Discussion

Doubet requests the Court to enter an Order granting it reasonable attorneys' fees and costs incurred in prosecuting this adversary proceeding. Doubet seeks attorneys' fees in the amount of $735,826.00 and costs in the amount of $77,535.25 for a total of $813,361.25. Doubet bases his request upon exceptions to the American Rule concerning litigants' expenses, Federal Rules of Bankruptcy Procedure 7054(b) and 7008(b) and Federal Rule of Civil Procedure 9(g).

> Federal Rule of Bankruptcy Procedure 7054(b) provides in pertinent part:
>
> (b) COSTS. The court may allow costs to the prevailing party except when a statute of the United States or these rules otherwise provides.

>Federal Rule of Bankruptcy Procedure 7008(b) provides:
>
>ATTORNEY'S FEES. A request for an award of attorney's fees shall be pleaded as a claim in a complaint, cross-claim, third-arty complaint, answer or reply as may be appropriate."

Federal Rule of Bankruptcy Procedure 7009 applies Federal Rule of Civil Procedure 9(g) to adversary proceedings which provides that "[w]hen items of special damage are claimed, they shall be specifically stated."

I. **The American Rule**

Under the American Rule regarding litigants' expenses, the prevailing party is not ordinarily entitled to attorneys' fees unless certain limited exceptions apply. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975); *Fleischmann Distill. Corp. v. Maier Brewing Co.*, 386 U.S. 714, 717 (1967).

Courts have developed several exceptions to the American Rule. In general, federal courts may award attorneys' fees under one of the following exceptions: (1) a contract provides for payment of attorneys' fees; (2) a statute provides an allowance of attorneys' fees; (3) a recovered fund or property confers a "common benefit," as in a class action suit; (4) a party willfully disobeys a court order; or (5) a court finds that the losing party has acted "in bad faith, vexatiously, wantonly or for oppressive reasons." *Cityside Archives, Ltd. v. New York City Health and Hosp. Corp.*, 37 F. Supp.2d 652, 656-657 (D.N.J. 1999), citing *Skehan v. Board of Trustees of Bloomsburg State College, et al.,* 538 F.2d 53, 56 (3d Cir. 1976), *cert. denied*, 429 U.S. 979 (1976), *remanded to* 431 F. Supp. 1379 (M.D.Pa. 1977), *aff'd*, 590 F.2d 470 (3rd Cir. 1978), *cert. denied*, 444 U.S. 832 (1979), *remanded to* 501 F. Supp. 1360 (M.D.Pa. 1980). See also *In re M & M Transp. Co.*, 1983 WL 2121, *1 (S.D.N.Y. 1983) ("However, where a party

3

has acted in bad faith either in filing an action or in its conduct of the litigation, an award of counsel fees is appropriate.") (citation omitted).

Essentially Doubet claims that it is entitled to attorneys' fees and costs pursuant to two exceptions to the American Rule where: (1) a contract provides for payment of attorneys' fees and (2) a court finds that a party has acted in bad faith, vexatiously, wantonly or for oppressive reasons.

Doubet argues that it is entitled to its attorney's fees under the exceptions to the American Rule by virtue of Palermo's litigation tactics in this adversary proceeding, his filings in Court concerning South Boston, River East and the MLL/XE transaction, and the errors and omissions in his statements and schedules filed with the Court. Doubet contends that Palermo had a single objective: to perpetrate fraud against Doubet and his bankruptcy estate which was evidenced by his lack of honest disclosure in his statements, schedules, trial tactics and arguments, the fact that 13 people were necessarily deposed (in NY, Miami, etc.), and tens of thousands of pages of discovery to reconstruct books and records needed review.

In opposition, Palermo contends that since he has filed an appeal, Doubet's request is premature and that none of exceptions to American Rule apply in this case.

II. A.  **Contractual Exception**

It is well settled law that reasonable attorneys fees and costs may be awarded to a prevailing party if the contract that governed the relationship between the parties provided for the same. *See Aleyska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 257(1975). The parties do not dispute that the contractual provisions are to be strictly construed.

B. **Merger Doctrine**

The parties do not dispute that under well-settled New York law, all claims or causes of action are merged into a subsequent judgment. "Where a cause of action has been prosecuted or reduced to judgment, the cause of action is swallowed up and merged in the judgment." *In re Whitney & Kitchen*, 146 A.D. 45, 130 N.Y.S. 629, 631 (1st Dept. 1911). *See also*, *Chase Manhattan Bank v. Brown & East Ridge Partners*, 243 A.D.2d 81, 83-84, 672 N.Y.S.2d 206 (4th Dept. 1998) ("'[a] cause of action is merged in a judgment rendered'") (internal citation omitted); *Kostopoulos v. Asturia Shipping Co.*, 467 F.2d 91, 95 (2d Cir. 1972) ("Once a claim is reduced to a judgment, the original claim is extinguished and merged into the judgment"). Accordingly, Doubet may not rely on provisions of notes and guaranty.

While the notes and guaranty allow for attorneys' fees "incurred by the holder in connection with the enforcement of the obligations under this Note" (Doubet's Motion Ex. A), each of the judgments explicitly prohibits the recovery of attorneys' fees. The $72,752.03 judgment indicates "in the event of default judgment [is] entered, plaintiff waives attorneys fees;" the $120,267.75 judgment indicates "in the even default is entered, plaintiff waives attorney fees;" and the $1,017,206.38 judgment indicates "in the event of default is entered, plaintiff agrees to waive attorney fees." (See Defendant's Opposition Ex. 1). Accordingly, it appears that up to the date of the judgments, Palermo is not entitled to attorneys' fees. With respect to activity thereafter, the following discussion applies.

III. **The Bad Faith Exception**

Doubet argues that it is entitled to reasonable attorneys' fees and costs under the "bad faith" exception to the American Rule based upon the argument that Palermo's litigation

5

tactics in this adversary proceeding, the Columbia-455 Central Park West transaction, his filings in court regarding South Boston, River East and the MLL/XE transaction and the errors and omissions in his statements and schedules filed with this Court were conceived with a single purpose: to cover the frauds he perpetrated against Doubet and his bankruptcy estate.  In essence Doubet urges the Court to base its award/sanction upon activity over the entire time line of events pre-litigation through post-bankruptcy filing including the course of the instant adversary proceeding pointing to *Chambers v. Nasco, Inc.*, 501 U.S. 32 (1991), *reh'g denied*, 501 U.S. 1269; *Hall v. Cole*, 412 U.S. 1 (1973); *Vaughan v. Atkinson*, 369 U.S. 527 (1962), *reh'g denied*, 370 U.S. 965 (1962), *on remand to*, 206 F.Supp. 575 (E.D.Va. 1962); and *Sierra Club v. U.S. Army Corps of Engineers*, 776 F.2d 383, 390 (2d Cir. 1985) for support.

      While in *Chambers v. Nasco*, the majority recognized a court's power to sanction conduct before other tribunals, its application appears limited.  Specifically, the majority found that Chamber's "attempt to gain the FCC's permission to build a new transmission tower was in direct contravention of the District Court's orders to maintain the status quo pending the outcome of the litigation and was therefore within the scope of the District Court's sanctioning power." *Id*. at 57.  However, in declining to express an opinion as to whether the District Court would have had the inherent power to sanction Chambers for conduct relating to the underlying breach of contract, the majority noted that "substantive state policy was not implicated here, where sanctions were imposed for conduct *during the litigation*." *Id*. at 54-55 (emphasis supplied).  Doubet's suggestion that *Chambers v. Nasco*, 501 U.S. at 46 supports the proposition stated in *Hall v. Cole,* 412 U.S. 1, 15 (1973) that "[i]t is clear, however that 'bad faith' may be found not only in the actions that led to the lawsuit, but also in the conduct of the litigation," is

6

also misplaced. *Chambers v. Nasco*, 32 U.S. at 46, the page referred to by Doubet, simply cites to *Hall v. Cole* for support in listing the exception to the American Rule that "a court may assess attorney's fees when a party has '"acted in bad faith, vexatiously, wantonly, or for oppressive reasons."'" (internal citations omitted). As the *Sierra Club v. U.S. Army Corps of Engineers, supra,* case is not specifically referred to in *Chambers v. Nasco, supra*, to the extent it is contrary it is overruled. However, to the extent that *Sierra Club* establishes the ability of a court to look to pre-litigation behavior in considering the "bad faith' exception to the American rule, we must look to its reasoning for guidance. In *Sierra Club,* the Second Circuit stated:

> Under the law in this Circuit, to award fees under the bad faith exception a court must find clear evidence that the losing party's claims were "entirely without color and made for reasons of harassment or delay or for other improper purposes." *Browning Debenture Holders'*, 560 F.2d at 1088; *Eastway Construction*, 762 F.2d at 253. The test is conjunctive and neither meritlessness alone nor improper purpose alone will suffice. *Colombrito v. Kelly*, 764 F.2d 122, 133 (2d Cir.1985); *PRC Harris, Inc. v. Boeing Co.*, 700 F.2d 894, 898 (2d Cir.), *cert. denied*, 464 U.S. 936, 104 S.Ct. 344, 78 L.Ed.2d 311 (1983). Under this test, a claim is "entirely without color" when it lacks any legal or factual basis. *Nemeroff v. Abelson*, 620 F.2d 339, 348 (2d Cir.1980) (*per curiam*) ( *Nemeroff I* ). While there is no precise definition of "improper purpose" it may be evidenced by conduct occurring either before or during trial. *Cf. Hall v. Cole*, 412 U.S. 1, 15, 93 S.Ct. 1943, 1951, 36 L.Ed.2d 702 (1973).

*Sierra Club v. U.S. Army Corps of Engineers*, 776 F.2d 383, 390 (2d Cir. 1985) (footnote omitted).

The question now becomes whether (1) Palermo's claims or defenses were entirely without colorable basis and (2) whether they were made for reasons of harassment, delay or improper purpose. The fact that Palermo was not successful on the merits, does not defacto establish that Palermo acted in bad faith either prior to the litigation or through his conduct during the litigation. See *In re M & M Transp. Co.*, 1983 WL 2121, *1 (S.D.N.Y. 1983).

Palermo argues that "bad faith" cannot be found in the instant case; he argues that the circumstances here are not severe enough to justify award. Palermo claims that he:

- took no action prior to trial.
- answered the complaint.
- submitted opposition to motion to extend discovery schedule, and
- is not responsible for motion practice related to/by third-parties.

Palermo further posits that the facts and circumstances of this action amply demonstrate that Palermo was "motivated by a reasonable belief he was entitled to a discharge" and not "solely to delay and multiply the Plaintiff's costs." *In re Miller*, 14 B.R. at 448. The reasoning in the case of *In re Miller*, 14 B.R. 443, 448 (Bankr. E.D.N.Y. 1981) is also instructive on this point:

> although the Bankrupt may have been guilty of "bad faith" in the sense that he apparently concealed assets, the Court feels that such conduct is not, in and of itself, sufficiently oppressive to justify the imposition of counsel fees as costs in addition to the statutory penalty of a denial of discharge. Having concluded so, however, the question still remains as to whether the Bankrupt's continued defense against the objections to discharge was maintained in bad faith. Or to rephrase, was the Bankrupt motivated by a reasonable belief he was entitled to a discharge, or was his purpose in defending solely to delay and multiply the Plaintiff's costs?

"Before making a 'bad faith' determination, a court must be persuaded that the arguments raised by the unsuccessful litigant lack any colorable basis; it is not sufficient that ultimately the party lost the case." *In re M&M Transportation Company*, 1983 WL2121 at *1.

In the previous decision, this Court held that (1) Palermo intended to hinder his creditors by transferring and concealing his property into the prepetition year, (2) Palermo concealed information and failed to preserve records from which his financial condition and business transactions could be ascertained, (3) Palermo failed to maintain sufficient records or provide any meaningful explanation of how he received or spent more than one million dollars over the past three years. Based upon this Court's the findings of fact and conclusions of law as

8

expressed in this Court's prior decision, *Doubet, LLC v. Palermo* (*In re Palermo*), 370 B.R. 599 (Bankr. S.D.N.Y. 2007), this Court cannot go so far as to find that Palermo had no colorable basis for defending the adversary proceeding. As to whether the adversary proceeding was defended solely as a further delaying tactic this Court cannot discern that fact based upon the present record.

IV. **Punitive Damages**

There is no express authority in the Bankruptcy Code to award punitive damages under Section 727. In fact, Doubet failed to provide the Court with any case citation where punitive damages were awarded to a creditor against a debtor in the context of Section 727. Doubet did provide a string citation of cases in which Bankruptcy Courts have awarded punitive damages. It is undisputed that the majority of cases consistently apply state law on the issue of punitive damages. Instead, Doubet urges the Court to look to a *In re Alwan Brothers Co., Inc.*, 105 B.R. 886 (Bankr. C.D.Ill. 1989), *reconsideration denied*, 112 B.R. 294 (Bankr. C.D.Ill. 1990), for the alternate view that punitive damages in the bankruptcy context are an issue of federal law. Aside from the fact that *In re Alwan Brothers Co., Inc.*, functions on the dischargeability under Section 523 of a punitive damage award of a separate tribunal and not issuance of punitive damages in the first instance as is requested here, it does provide guidance by stating that:

> Section 362(h) of the Bankruptcy Code explicitly provides for the allowance of punitive damages for willful violations of the automatic stay, strongly suggesting that where Congress intended punitive damages to be recoverable, it provided exactly that.
>
> \*\*\*
>
> The Bankruptcy Court is not a forum for deterring misconduct. A dishonest debtor is penalized under Section 523(a)(2), (a)(4) or (a)(6) by

9

> not being absolved of his obligation to compensate certain creditors for the harm he has caused. But there is no punishment for punishment's sake in bankruptcy. In a Chapter 7 case, if assets permit, a claim for punitive damages will be satisfied.

*In re Alwan Brothers Co., Inc.*, 105 B.R. at 891-92 (footnote omitted).  This Court will not follow the minority view but will follow the majority by looking to state law.  The New York State Court of Appeals set forth the standard for punitive damages in *Rocanova v. Equitable Life Assurance Society of the United States*, 83 N.Y.2d 603 (1994) in holding that,

> Punitive damages are not recoverable for an ordinary breach of contract as their purpose is not to remedy private wrongs but to vindicate public rights (see, *Garrity v Lyle Stuart, Inc*., 40 NY2d 354, 358). However, where the breach of contract also involves a fraud evincing a "high degree of moral turpitude" and demonstrating "such wanton dishonesty as to imply a criminal indifference to civil obligations", punitive damages are recoverable if the conduct was "aimed at the public generally" (*see*, *Walker v Sheldon*, 10 NY2d 401, 404-405). Punitive damages are available where the conduct constituting, accompanying, or associated with the breach of contract is first actionable as an independent tort for which compensatory damages are ordinarily available, and is sufficiently egregious under the Walker standard to warrant the additional imposition of exemplary damages. Thus, a private party seeking to recover punitive damages must not only demonstrate egregious tortious conduct by which he or she was aggrieved, but also that such conduct was part of a pattern of similar conduct directed at the public generally. Clearly, then, the standard for awarding punitive damages in first-party insurance actions is "a strict one" (*see*, *Cohen v New York Prop. Ins. Underwriting Assn.*, 65 AD2d 71, 79), and this extraordinary remedy will be available "only in a limited number of instances" (*see*, *Garrity*, 40 NY2d, at 358, supra).

*Rocanova v. Equitable Life Assurance Society of the United States*, 83 N.Y.2d 603, 613 (1994). While the facts adduced at trial were sufficient to deny the debtor his discharge, this Court did not go as far as to rule upon whether there was a breach of contract that "also involves a fraud evincing such a 'high degree of moral turpitude' and demonstrating 'such wanton dishonesty as to imply a criminal indifference to civil obligations.'"  *Rocanova v. Equitable Life Assurance Society of the United States*, 83 N.Y.2d at 613 (internal citations omitted).  As to whether the

debtor's acts were aimed at the general public, the record does reflect that the debtor's actions were to evade not only Silver but to extend to any of his creditors, thus it can be found that his actions may have been aimed at the general public. However since both prongs of the standard are not met, punitive damages are not warranted.

V. **Costs**

Doubet seeks $77,535.25 in costs incurred in prosecuting this adversary proceeding. In pointing the Court to the case of *In re Miller, supra,* 14 B.R. 443 (Bankr. E.D.N.Y. 1981) for guidance in determining whether bad faith was established in order to award attorneys' fees, the debtor has also provided guidance through the reasoning of *In re Miller* in determining whether costs are appropriate. In recognizing that under the Act as effective in 1981 where costs awarded in actions involving creditors who succeeded in actions to deny discharge would be paid from the estate, the court stated:

> But this does not mean that the Court may not assess such costs against the bankrupt(.)" *Gelson v. Rudin*, 200 F.2d 31, 33 (2d Cir. 1952). In fact, the mere lack of funds within the estate to pay the assessment has justified their imposition on the bankrupt instead. *Id.*
>
> * * *
>
> Therefore, where, as here, a bankrupt has apparently concealed assets, and the creditor has expended his funds in seeking these out and preparing an objection to discharge based thereon, which after two years of legal maneuvering has resulted in a waiver of discharge, the Court feels well within its prerogatives in taxing the creditor's disbursements as costs personally against the Bankrupt.

*In re Miller,* 14 B.R. at 446 (footnote omitted). Similarly, here, where the creditor has been pursuing Palermo for an extended period of time where Palermo, among other things, concealed assets and information, this Court "[i]n light of the length of the litigation and the results achieved, . . . finds the disbursements claimed reasonable." *Id*. at 446. Accordingly, $77,535.25

in the amount of costs is awarded to Doubet from Palermo.

## Conclusion

For the foregoing reasons, Doubet's request for attorneys' fees is denied and costs approved. Counsel for Palermo is directed to submit an order in conformity with this decision that reflects consent of Doubet as to form but not to affect any party's right to appeal.

Dated: White Plains, NY
December 3, 2007

/s/Adlai S. Hardin, Jr.
U.S.B.J.